IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD M. JORDAN, ) | |
| ) | |
| Plaintiff, ) | No. 10 C 1178 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| FRANK DIAZ, WILLIAM THOMAS, ) | |
| SALVADOR GODINEZ, GILBERTO ROMERO, ) | |
| THOMAS DART, KEVIN SIMS, and ) | |
| MORGHOOB KHAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donald Jordan filed a two-count second amended complaint pursuant to 42 U.S.C. § 1983, alleging that he received constitutionally inadequate medical care for a finger injury that he suffered as a pretrial detainee at the Cook County Jail.[1] There are two groups of defendants: four Cook County Department of Corrections officials ("Sheriff defendants") and two health care professionals employed by Cermak Health Services of Cook County ("Cermak defendants"), the daily health care provider for all Cook County pretrial detainees.[2] The Sheriff defendants are: Cook County Sheriff Thomas Dart; Gilberto Romero, Assistant Executive Director of the Cook County Jail for a portion of plaintiff's incarceration; William Thomas, the Divisional Superintendent of Division 9 of the Cook County Jail during at least a portion of plaintiff's incarceration; and Salvador Godinez, the Executive Director of the Cook County Jail.

---

[1] Plaintiff filed a first amended complaint on July 12, 2010. On October 8, 2010, plaintiff responded to defendants' motions to dismiss and simultaneously sought leave to file a second amended complaint. The court granted plaintiff leave to file his second amended complaint.

[2] Plaintiff has also sued Frank Diaz, Chief of the Criminal Investigating Unit at the Cook County Jail, who has answered plaintiff's second amended complaint.

The Cermak defendants are Morghoob Khan, an attending physician, and Kevin Sims, a physician's assistant. All defendants are sued in their individual capacities, and defendants Dart and Thomas are also sued in their official capacities. Both groups of defendants have moved to dismiss Count II of the amended complaint (the only one in which they are named) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons described below, the court denies defendants' motions.

## **FACTS**[3]

At all relevant times, plaintiff was a pretrial detainee at the Cook County Jail. In July 2006, plaintiff injured his left pinky finger during a riot. He reported his injury and was referred to Cermak. In October 2006, plaintiff was taken to Stroger Hospital, where doctors x-rayed his finger and prescribed physical therapy.

Plaintiff reinjured his left pinky finger in July 2007. The next month, doctors at Stroger x-rayed plaintiff's finger and determined that it had broken bones and torn ligaments. Cermak doctors performed their own x-ray and came to the same conclusion. The Cermak doctors prescribed pain medication for plaintiff's injury. Through August and September 2007, plaintiff attended biweekly doctor's appointments at Stroger, where the doctors eventually determined that he needed surgery to alleviate the pain and prevent further injury. The Cermak doctors agreed with this assessment.

In October 2007, plaintiff "was not allowed to go to Stroger for a scheduled check-up." Plaintiff filed a grievance, sent numerous requests to doctors at Cermak, and sent a letter to the then-Divisional Superintendent at the Cook County Jail. In December 2007, plaintiff received a

---

[3] These facts come from the complaint, and for purposes of evaluating defendants' motions to dismiss, the court accepts them as true.

response to his grievance, which stated that his case had been referred to Cermak. Plaintiff appealed but received no response.

Plaintiff's twice-monthly appointments at Stroger resumed a few months later and continued through May 2008. The Stroger doctors eventually scheduled plaintiff's surgery for May 20, 2008—but the day before the scheduled surgery, defendant Diaz cancelled it, explaining that he planned to charge plaintiff with another criminal offense and wanted that news to appear in the May 20 papers. Plaintiff responded that he had a severe injury requiring immediate surgery. Defendant Diaz countered that his injury was not that important and that the hospital would have to handle it at another time.

Plaintiff proceeded to file five more grievances with the Cook County Jail (in addition to the October 2007 grievance), as well as communicating directly with each Sheriff defendant by sending them letters and having his mother leave detailed phone messages for them. These communications described plaintiff's injuries, defendant Diaz's cancellation of the surgery, and, as time wore on, the various defendants' failures to respond. Plaintiff did not receive a response to any of these communications, except as otherwise indicated:

- a grievance filed on May 21, 2008;

- a grievance filed on June 21, 2008;

- a June 21, 2008, letter to defendant Thomas;

- June 23, June 25, and July 7, 2008, voicemails plaintiff's mother left for defendant Thomas;

- a grievance filed in December 2008 (specifically regarding plaintiff's failure to be sent back to Stroger for treatment);

- a June 3, 2009, letter to defendant Thomas (explaining that he was not receiving adequate medical care and that the doctors at Cermak were not attending to his medical needs);

3

- an August 13, 2009, letter to defendant Thomas (explaining that he had not been sent to Stroger since August 2008 and that he had filed several unsuccessful grievances, and again asking to be sent back to Stroger);[4]

- an August 18, 2009, letter to defendant Thomas;

- a grievance filed on August 18, 2009;

- a grievance filed on August 30, 2009;[5]

- an August 30, 2009, letter to defendant Romero;

- an August 30, 2009, voicemail plaintiff's mother left for defendant Romero;

- a September 8, 2009, letter to defendant Godinez;

- a September 8, 2009, voicemail plaintiff's mother left for defendant Godinez;

- a September 14, 2009, letter to defendant Dart; and

- a September 14, 2009, voicemail plaintiff's mother left for defendant Dart.

Plaintiff also informed the Cermak defendants of his plight and asked for their assistance. On November 5, 2008, he wrote individual letters to each of them, describing the severe pain and numbness in his left pinky, explaining that he had not been to Stroger since August 2008, and pleading for help. At some point in November 2008, plaintiff spoke with either defendant Khan or Sims, who told plaintiff he was to be sent back to Stroger. In June or July 2009, defendant Sims again assured plaintiff he would be sent to Stroger, but that did not happen.

## DISCUSSION

---

[4] Plaintiff does not state whether he received a response to this letter.

[5] On September 16, 2009, plaintiff received a response to this grievance, which referred him to Cermak. Plaintiff filed a request for appeal on the same day, which was denied on September 29, 2009.

4

**I.     Legal Standards**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, the court thus accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," id. at 555, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). In addition, its allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." Twombly, 550 U.S. at 555, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (explaining that Twombly's pleading principles apply in all civil actions).

Pretrial detainees have a Fourteenth Amendment right to adequate medical care, which is assessed under the same standard as Eighth Amendment deliberate indifference claims. Williams v. Rodriguez, 509 F.3d 392, 401 (7th Cir. 2007). To establish a claim of deliberate indifference, an inmate must show both that he suffers from an objectively serious medical condition, and that a prison official is subjectively aware of and consciously disregards his medical need. Grieveson v. Anderson, 538 F.3d 763, 775 (7th Cir. 2008), citing Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001). Deliberate indifference is unconstitutional "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

5

intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (footnote omitted). In the instant case, plaintiff has sufficiently alleged deliberate indifference claims against both the prison officials (the Sheriff defendants) and the medical staff (the Cermak defendants).

## II. Defendants Dart, Godinez, Romero, and Thomas's Motion to Dismiss

### A. Claims Against Sheriff Defendants in Their Individual Capacities

The Sheriff defendants have moved to dismiss plaintiff's claims against them in their individual capacities, arguing that plaintiff's deliberate indifference allegations are supported by mere legal conclusions instead of facts. Plaintiff has, however, provided specific, fact-based allegations against each of the Sheriff defendants. The complaint alleges that: (1) after defendant Diaz cancelled plaintiff's surgery, plaintiff sent individual letters to each of the four Sheriff defendants, explaining his inadequate medical treatment and asking for help; (2) all of the Sheriff defendants failed to respond to those letters; (3) his mother called each of the Sheriff defendants, leaving messages in which she described plaintiff's inadequate medical treatment and asked for help; and (4) none of the Sheriff defendants responded to those messages. These allegations, along with those describing plaintiff's injury and cancelled surgery, indicate that plaintiff has "provide[d] enough details about the subject matter of the case to present a story that holds together." Swanson v. Citibank N.A., 614 F.3d 400, 404 (7th Cir. 2010). If plaintiff's allegations are taken as true, surgery was medically necessary to alleviate his severe pain and numbness and to prevent future injury, and defendants ignored his serious medical condition for months. See Diaz v. Hart, No. 08 C 5621, 2010 U.S. Dist. LEXIS 20671, at *23 (N.D. Ill. March 8, 2010). That is all that is necessary to defeat defendants' motion to dismiss.

6

The Sheriff defendants unpersuasively contend that because plaintiff has not alleged that they actually received his letters and grievances or otherwise knew about them, he has failed to allege plausible individual liability claims against them. At the very least, plaintiff's allegations that he sent letters and grievances create a plausible inference that defendants received them. Without the benefit of discovery, plaintiff has no way of knowing whether the Sheriff defendants actually received and read his correspondence. At this stage in the litigation, plaintiff's allegation that defendants were aware of the information contained in the letters and grievances is sufficient. See Santiago v. Walls, 599 F.3d 749, 759 (7th Cir. 2010) (finding that plaintiff's allegation that the warden knew or should have known of conditions posing a substantial risk of serious harm was "sufficient, at the pleading stage, to state a claim that [the warden] actually knew or consciously turned a blind eye toward an obvious risk").

Nor are the Sheriff defendants correct that plaintiff has failed to state a claim against them because, given their high-level administrative positions, they "would not have personally participated in the alleged delay of medical treatment." Plaintiff has provided enough facts to support an inference that the Sheriff defendants knew or should have known of plaintiff's serious medical condition, but did nothing. His allegations of letters, grievances, and phone messages suffice at this stage to create a plausible inference of the Sheriff defendants' personal involvement. See, e.g., Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006) (Director of Illinois Department of Corrections could have been found liable on Eighth Amendment deliberate indifference theory had there existed "record evidence that because of the purported [grievance] letters [from the inmate], [he] knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated"). The fact

7

that the Sheriff defendants are high-ranking officials in the Cook County Department of Corrections hierarchy does not change the court's analysis.

B.      **Claims Against Defendants Dart and Thomas in Their Official Capacities**

The Sheriff defendants further argue that plaintiff has failed to state a claim against defendants Dart and Thomas in their official capacities. Under <u>Monell v. Dep't of Social Servs. of the City of New York</u>, 436 U.S. 658 (1978), three different grounds exist for an official policy claim: 1) an express policy that causes a constitutional deprivation when enforced; 2) a widespread practice that was so permanent and well settled as to constitute a custom or usage with the force of law; or 3) a constitutional injury caused by an official with final policymaking authority. As the Sheriff defendants note in their motion to dismiss, an "official capacity claim must at a minimum include allegations in conclusory language that a policy existed, buttressed by facts alleging wrongdoing by the governmental entity." No heightened pleading standard applies to <u>Monell</u> claims. <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168 (1993). Thus, a plaintiff need not plead particular facts on which his claim of an official policy or custom is based; a "short and plain statement" that the official policy or custom caused his injury will suffice to survive a motion to dismiss. <u>Id.</u>; Fed. R. Civ. P. 8(a)(2).

Plaintiff's second amended complaint, filed after the Sheriff defendants moved to dismiss his first amended complaint, successfully remedied their concern that the first amended complaint failed to allege "any policy, practice, or custom at all as required in <u>Monell</u>." The second amended complaint alleges "a policy or widespread custom at the Cook County Jail of ignoring detainees' serious medical conditions" and "unconstitutionally denying detainees'

8

treatment for their serious medical condition." Plaintiff further alleges that defendants Dart and Thomas either "established this policy or allowed a de facto policy of denying procedures necessary to treat the serious medical conditions of detainees," and that they "allowed the custom and practice of denying detainees' necessary medical treatment and thereby endorsed it." These allegations are sufficiently specific to state a Monell claim.

Further, contrary to the Sheriff defendants' assertions, plaintiff's second amended complaint does more than allege an isolated single incident of unconstitutional activity. See Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir. 1994) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident also includes proof that it was caused by an existing, unconstitutional municipal policy."). In fact, the complaint's allegations span a period of many months (from May 2008 to September 2009) and include multiple instances of failure to treat plaintiff's serious medical condition. The fact that each denial of treatment arises out of a common set of facts—plaintiff's injured finger and failure to receive surgery—does not mean the court must consider them as one incident. When a plaintiff sustains the same constitutional violation multiple times, even if the violations all arise from a single set of facts, the policy that caused the violation can be considered "systematic in nature." See Powe v. City of Chicago, 664 F.2d 639, 651 (7th Cir. 1981) (holding that a plaintiff who was arrested multiple times on the same vague warrant alleged a Monell claim because various employees in different departments were involved in failing to create an adequate description).

### III. Defendants Khan and Sims's Motion to Dismiss

The Cermak defendants erroneously assert that the second amended complaint does not allege the subjective element of a deliberate indifference claim against them in their individual capacities.[6] To satisfy the subjective element of a deliberate indifference claim, a plaintiff must allege that "the official [had] subjective knowledge of the risk to the inmate's health, and the official . . . disregard[ed] that risk." Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). Plaintiff alleges that he explained his serious medical condition to both Cermak defendants, by sending individual letters to each of them and by speaking to defendant Sims and possibly also defendant Khan. These factual allegations establish a plausible claim that the Cermak defendants had subjective knowledge of plaintiff's medical condition, and by alleging that the Cermak defendants did nothing (other than assure him that medical treatment at Stroger would be resumed), plaintiff also establishes that they disregarded the risk posed by his medical condition.

Additionally, as in any § 1983 suit, plaintiff must allege that the Cermak defendants were personally involved in the deprivation of his constitutional rights. E.g., Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). This principle, however, does not require the incantation of specific phrases like "personal involvement" or "personal responsibility." Although the doctrine of respondeat superior does not apply to § 1983 claims, a plaintiff may satisfy the personal responsibility requirement by pleading that "the conduct causing the constitutional deprivation occurs . . . with [the defendant's] knowledge and consent." Id., quoting Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985) (internal citation and quotations omitted). By alleging that he informed

---

[6] For purposes of this motion, defendants Khan and Sims concede that plaintiff's medical condition was objectively serious.

the Cermak defendants about his medical condition and inadequate care, plaintiff has done exactly that. See Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009) ("A prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted . . . .").

Finally, the Cermak defendants contend that plaintiff has pled himself out of court both by attaching to his second amended complaint a grievance form on which the appeal board noted that Stroger bears responsibility for scheduling surgeries, and by alleging that defendant Diaz was solely responsible for cancelling his surgery. But cancellation of his surgery is not the only basis for plaintiff's deliberate indifference claim; he also alleges that the Cermak defendants ignored his entreaties and failed to help him resume medical treatment. Defendants' arguments, therefore, are unavailing.

## CONCLUSION

For the reasons discussed above, the court denies defendants' motions to dismiss. Defendants are directed to answer the second amended complaint on or before January 24, 2011. The parties are directed to prepare and file a joint status report using the court's form on or before January 31, 2011. The status hearing set for January 6, 2010, is continued to February 10, 2011, at 9:00 a.m.

**ENTER:** **December 23, 2010**

_____
**Robert W. Gettleman**
**United States District Judge**